# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

|  |  |  |
|---|---|---|
| | § | |
| IN RE: | § | **CHAPTER 11** |
| | § | |
| **MARQUEZ CONSTRUCTION AND** | § | **CASE NO. 24-31042-CGB** |
| **MAINTENANCE, LLC,** | § | |
| | § | |
| **DEBTOR.** | § | |

## RESPONSE TO MOTION OF THE UNITED STATES TRUSTEE TO CONVERT OR DISMISS CASE

Comes now *Marquez Construction & Maintenance, LLC* ("MCM"), Chapter 11 Debtor herein, and files its *Response to the Motion of the United States Trustee to Convert or Dismiss Case* (the "Response") filed by The United States Trustee ("US Trustee"), and in support hereof would respectfully show the Court as follows:

## SUMMARY OF RESPONSE & OBJECTION TO MOTION TO CONVERT OR DISMISS CASE

It would be utterly catastrophic for *Marquez Construction and Maintenance, LLC's* ("MCM") Chapter 11 case to be dismissed, or worse converted to a Chapter 7 case for the reasons explained in this *Response*.

MCM is an operating entity specializing in oilfield ***construction*** services for customers in the West Texas Permian Basin under approximately fifty (50) *Master Servicing Agreements* ("MSA's").[1] MCM currently has **50** employees. MCM is field-certified to perform oil field work for its customers.. There is an affiliate (insider) entity known as TALIS INDUSTRIES, LLC

---

[1]    A "*Master Servicing Agreement*" is generally defined as a contract used by oil and gas companies to enter into an agreement in advance with their contractors that specifies the terms and conditions that will govern the contractors' work. *See* www.irmi.com/term/insurance-definitions/master-service-agreement.

("TALIS") which provides certified oil-field **welding** services for the same representative customers as follows:

    a).    **XTO Energy, Inc.** which merged with ExxonMobile ([www.xtoenergy.com](www.xtoenergy.com));[2]

    b).    **OXY** ([www.oxy.com](www.oxy.com));

    c).    Propetro Services ([www.propetroservices.com](www.propetroservices.com));

The relationship with TALIS is critical to understanding MCM's business structure, and for purposes of the UST's *Motion*, why transfers have been made to it prepetition and postpetition. TALIS serves as MCM's subcontractor for specialized oil field work. Whereas MCM is field-certified, TALIS is "welding shop-certified".[3] TALIS does no actual field work, nor is it certified to do so. Though it serves as MCM's subcontractor, there is currently no written *Subcontractor Agreement* between MCM and Talis - nor has there ever been. TALIS was formed in **2017**, and MCM/TALIS always operated in the manner in which they have operated during the pendency of the Chapter 11 case. Based on their affiliate relationship resulting from common ownership (*Angel Marquez* and *Maribel Marquez*), since inception MCM's accountant advised that it was not necessary; and to date had not ever been an operational issue.

Operationally, when an MCM customer requested services under their MSA, and the requested work required shop welding services, the type of which TALIS was certified to perform,

---

[2]    XTO currently owes MCM **$530,199**.

[3]    As mentioned, TALIS is "shop-certified" by *The National Board of Boiler & Pressure Vessel Inspectors*. MCM is not "shop-certified" because its focus is on field services - not shop services - and it costs approximately **$50,000** to meet the requirements for the certification. Conversely, TALIS does not have its own MSA's because it does not perform field services, and again, it is an expensive exercise to meet the criteria (i.e., field safety requirements) to be eligible to enter into MSA with the customers MCM already has agreements with.

MCM would simply have TALIS perform that part of the job. TALIS, being a separate entity, would incur expenses, including labor, to perform the welding services, and because MCM and TALIS shared the same ownership and management, MCM knew how much to pay to TALIS for the welding services.[4] For the majority of TALIS' existence, no separate invoices were generated by TALIS to MCM for payment. Based on their accountant's advice, to ensure that "clean" records were kept, i.e., to "run clean books", the accountant recommended that internal purchase orders be maintained with a letter designation for MCM "**M**" on the account, and a "**T**" for TALIS on the account.

### Objection to Conversion to Chapter 7

With the above as context,  as the Chapter 11 case has progressed, MCM has entered postpetition MSA with new customers. Thus, if the case were to convert to Chapter 7, all active MSA's would be defaulted upon, resulting in ***substantial*** breach of contract claims against MCM's Chapter 7 Estate - for both prepetition and postpetition MSA's for ongoing work.

Additionally, conversion to Chapter 7 would result in the immediate termination of the fifty (50) employees whose livelihoods depend on employment with MCM.

### All Assets Encumbered - Primarily by Internal Revenue Service and Pioneer Bank

All of MCM's personal property, including accounts receivable, is subject to federal tax liens in favor the *Internal Revenue Service* ("IRS") in the amount of **$2,254,396.15** per its most

---

[4]     Neither *Angel Marquez* nor *Maribel Marquez* are on TALIS' payroll, and receive no salary, distributions, dividends, or expense reimbursement from it. There is one "insider" on TALIS' payroll - their son *Tyler Marquez*, who serves as its general manager and receives between $1,600 to $1,800 per week. This is not a position based on their relationship or nepotism, he holds a Bachelor's Degree in Finance and commits to managing it full-time.

recent *Proof of Claim* and Form UCC-1 Financing Statements in favor of *Pioneer Bank*, MCM's previous prepetition factor (MCM is not factoring postpetition) in the amount of **$2,562,610.22** per its most recent *Proof of Claim*. The nature of their liens, the collateral to which the liens attach, the extent of the liens, amount of debt secured by the liens are detailed in the *Agreed Order on Motion for Authorization to Use Cash Collateral* entered on **February 26, 2025** (**Doc. No. 80**). All of MCM's property is subject not just to first liens, but also second liens between the IRS and CNB (though the final order of priority remains to be determined), as well as the security interests of equipment lenders including Wells Fargo Bank and Caterpillar. Thus, conversion would result in breach of contract claims, feeding frenzies for collateral, and no assets for a Chapter 7 Trustee to administer.

### *Objection to Dismissal of Chapter 11 Case*

Similarly, MCM also objects to the dismissal of the Chapter 11 case. Though dismissal would not result in breach of contract claims, there would be a similar rush towards the recovery/repossession of secured creditors' collateral. Moreover, Pioneer Bank would re-assert the prepetition *Application to Appointment State Court Receiver* which was stayed by the Chapter 11 filing, and in full transparency, was one of the catalysts for the filing to begin with.

Moreover, both upon conversion or dismissal, the Agreed Order with the IRS and Pioneer Bank would either be defaulted on or mooted, and the substantial progress made by the Parties to it, MCM, IRS, *Pioneer Bank*, *Tax Assessor/Collector* would be wasted.

For the above reasons, and as further detailed, MCM strongly objects to the dismissal or conversion of its Chapter 11 proceeding. Only by staying in Chapter 11 can it progress with its reorganization efforts, its arrangements with secured creditors, and avoid the wholesale feeding frenzy on what would remain of its business carcass.

Alternatively, if it comes down to between conversion and dismissal, MCM does not object to the dismissal of the Case.

## I.  SUMMARY OF ARGUMENT

1.  **Paragraph 1** of the *Motion* states:

There is "cause" to convert or dismiss this case under 11 U.S.C. §§ 1112(b)(4)(B), (H), and (K) because: (1) the Debtor is grossly mismanaging the estate; (2) the Debtor has failed to file accurate schedules and an accurate statement of financial affairs; (3) the Debtor has failed to provide documents reasonably requested by the United States Trustee; and (4) the Debtor has failed to pay outstanding U.S. Trustee quarterly fees.

MCM objects to the assertions in **Paragraph 1**. With regards to the UST's specific grounds, MCM would show as follows:

(1)  **the Debtor is grossly mismanaging the estate**. MCM denies that it is "grossly mismanaging the estate". To the contrary, since the *Petition Date*, MCM has expended time and resources to right its ship. The Chapter 11 case was filed because of the service of a combination of i). federal tax lien notices by the IRS; ii). UCC-1 notices by merchant lenders; and iii). state court litigation seeking the appointment of a state court receiver filed by *Pioneer Bank* against MCM and its principals. By filing for bankruptcy relief, MCM was able to achieve a release of the federal tax lien and UCC-1 notices, and especially crucial, a wide resolution of the causes of action

sought by PNB in its receivership application. Again, the resolution is memorialized in the *Agreed Order*.

(2)     **the Debtor has failed to file accurate schedules and an accurate statement of financial affairs.** MCM filed its *Amended Schedule of Assets & Liabilities & Statement of Financial Affairs* ("SOFA") on April 7, 2025. True, there was a delay in preparing the Amended Schedules and SOFA. This delay resulted from the condition of the MCM's books and records, the condition of which has improved since the *Petition Date*, as well as the over-lapping business operations with its affiliates TALIS, LLC and DAAT, LLC. Unfortunately, MCM has spent considerable (with the guidance of the United States Trustee), in dissecting and segregating the numerous transactions and transfers between MCM, TALIS, and DAAT, as well as Angel and Maribel Marquez, MCM's principals as well as of TALIS and DAAT.

(3)     **the Debtor has failed to provide documents reasonably requested by the United States Trustee.** For reasons similar to those described above in subparagraph (2), MCM admits it has been delayed in providing information to the UST. However, at no point has MCM or its attorney avoided communication with the UST's Office.

(4)     **the Debtor has failed to pay outstanding U.S. Trustee quarterly fees**. MCM is aware that it currently owes the UST $24,XXX in Quarterly Fees to Date. The delay has been in collecting accounts receivable due from its largest customers XTO and OXY (ExxonMobile). Between these two customers, MCM is owed approximately. The delay has resulted from the final release of funds because of the prepetition tax lien and UCC-1 notices. *Pioneer Bank's* Counsel has been instrumental in helping obtain release of those funds, and in fact, as of April 7, 2025, all

documentation demanded by General Counsel for these customers had been forwarded, and the

funds are expected to be released shortly. Immediately upon receipt, unpaid Quarterly Fees will

be satisfied.

2.        **Paragraph 2** of the *Motion* provides:

Upon information and belief, the Debtor continues to accrue administrative expenses while failing
to comply with the requirements of a debtor in possession. Accordingly, there is "cause" for the
Court to convert or dismiss this case and, upon information and belief, conversion is in the best
interests of creditors.

In response to **Paragraph 2**, MCM is not aware of what "administrative expenses"

continue to accrue postpetition.

## II.        JURISDICTION AND STANDING

3.        **Paragraph 3** of the *Motion* provides:

The Court has jurisdiction of this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a
core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. § 1409(a).

MCM has no objection to **Paragraph 3**.

4.        **Paragraph 4** of the *Motion* provides:

Pursuant to 11 U.S.C. § 307, the U.S. Trustee "may raise and may appear and be
heard on any issue in any case or proceeding under this title . . . ."

MCM has no objection to **Paragraph 4**.

## III. STATEMENT OF FACTS

5.        **Paragraph 5** of the *Motion* provides:

On August 28, 2024, the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of
the United States Code. The Debtor is owned and operated by Jose and Maribel Marquez.

MCM admits the factual statements in **Paragraph 5**.

6.          **Paragraph 6** of the *Motion* provides:

> On September 26, 2024, the Debtor filed its Schedules and Statement of Financial Affairs ("SOFA"). Docket No. 20. Section 7 of the SOFA lists a lawsuit involving the Debtor and another entity called "Talis Industries." Id. at 43.

MCM admits the factual statements in **Paragraph 6**. TALIS is an affiliate of MCM, owned by Angel and Maribel Marquez. As referenced above, MCM holds approximately fifty (50) Master Servicing Agreements ("MSA" - samples of which have been previously provided to the UST), and TALIS, as a subcontractor to MCM, performs the services required by customers under the MCA's.

7.          **Paragraph 7** of the *Motion* provides:

That same day, the Debtor also filed its section 1116 documents. Docket No. 22. The only document filed was the Debtor's 2023 tax return. The Debtor failed to file a balance sheet, statement of operations, or cash-flow statement. Despite failing to file the financial documents on the docket, the Debtor did provide the U.S. Trustee copies of a balance sheet and profit and loss statement for 2021, 2022, and 2023. The 2023 Balance Sheet lists numerous assets that were not listed on Schedule A/B. **Exhibit A**. It also lists $2,465,912.26 as "Due from Talis-Intercompany." Id.

MCM admits the factual statements contained in **Paragraph 7**. The incomplete nature of the Schedules/SOFA did not arise from an intent and attempt to conceal or not disclose assets but simply the condition of the MCM's books and records on the Petition Date (combined with the over-lapping operations of TALIS and DAAT).

8.          **Paragraph 8** of the *Motion* provides:

On October 3, 2024, the U.S. Trustee conducted the initial meeting of creditors. During the meeting of creditors, the Debtor's representative testified that Talis Industries ("Talis") is an affiliate of the

Debtor because Talis and the Debtor are both owned by Jose and Maribel Marquez. Counsel for the U.S. Trustee requested that the Debtor provide certain prepetition bank statements. Because the Debtor's Schedules and SOFA required numerous amendments, the meeting was adjourned to October 22, 2024.

MCM admits the factual statements contained in **Paragraph 8**.

9. **Paragraph 9** of the *Motion* provides:

On October 21, 2024, the Debtor filed Amended Schedules A/B and an Amended SOFA. Docket No. 33.

MCM admits the factual statements contained in **Paragraph 9**.

10. **Paragraph 10** of the *Motion* provides:

On October 22, 2024, the Debtor provided the U.S. Trustee with the bank statements that were requested at the first meeting of creditors. The September 2024 bank statement for the Debtor, ending in 8017, showed that the Debtor received a wire transfer of $1.75 million from Silver Hill Energy Operating LLC on September 20, 2024. **Exhibit B**. The bank statement further shows that, during that same month, the Debtor transferred over $500,000 to an unknown account ending in 5811. Upon information and belief, the account ending in 5811 belongs to the Debtor's insider, Talis.

MCM admits the factual statements contained in **Paragraph 9**.

11. **Paragraph 11** of the *Motion* provides:

That same day, the U.S. Trustee conducted the continued meeting of creditors. At the second meeting of creditors, the U.S. Trustee asked the Debtor representative to identify who owns the account ending 5811. The Debtor represented that the account ending 5811 belongs to the Debtor's affiliate, Talis, and was payment for certain work that Talis would be performing for the Debtor. Counsel for the U.S. Trustee requested documents verifying the legitimacy of those transfers to an insider (invoices, subcontractor agreements, etc.).

MCM admits the factual statements contained in **Paragraph 11**.

12. **Paragraph 12** of the *Motion* provides:

At the continued meeting of creditors on October 22, 2024, the U.S. Trustee requested that the Debtor: (i) amend its Schedule A/B to list all bank accounts; (ii) amend its SOFA to list all payments to creditors in the within 90 days before filing the case; (iii) amend its SOFA to list all payments or transfers of property made within 1 year before filing the case that benefited any insider; and (iv) amend its SOFA to list sales of property outside the ordinary course of business.

With the understanding that those amendments would be made shortly, the U.S. Trustee concluded the meeting of creditors.

MCM admits the factual statements contained in **Paragraph 12**.

13. **Paragraph 13** of the *Motion* provides:

After the second meeting of creditors, counsel for the U.S. Trustee sent an email on October 22, 2024 reiterating her request for amendments to the Schedules and SOFA as discussed at the continued meeting of creditors. **Exhibit C.**

MCM admits the factual statements contained in **Paragraph 13**.

14. **Paragraph 14** of the *Motion* provides:

On October 24, 2024, the Debtor filed a monthly operating report that covered the petition date through the end of September 2024. Docket No. 34 (the "September 2024 MOR"). The September 2024 MOR shows numerous transfers between the Debtor's bank accounts and Talis' account ending 5811 in amounts that total over $500,000. Id. The balance sheet attached to the September 2024 MOR shows an intercompany balance owed by Talis to the Debtor of $4,014,413.49. Id.

MCM admits the factual statements contained in **Paragraph 14**.

15. **Paragraph 15** of the *Motion* provides:

On October 31, 2024, the U.S. Trustee emailed Debtor's counsel again requesting certain information and that amendments be made to the Schedules and SOFA. **Exhibit D.** The Debtor provided some, but not all of the information requested by the U.S. Trustee. To date, the Debtor has not amended its Schedules and SOFA.

MCM admits the factual statements contained in **Paragraph 14**.

16. **Paragraph 16** of the *Motion* provides:

On November 29, 2024, the U.S. Trustee sent another email to Debtor's counsel requesting certain information, including verification of transfers from the Debtor to Talis. **Exhibit E.** To date, the Debtor has not provided information to verify the transfers from the Debtor to Talis.

MCM admits the factual statements contained in **Paragraph 15**.

17. **Paragraph 17** of the *Motion* provides:

On December 20, 2024, the Debtor filed a monthly operating report that covered the period of October 1, 2024 through October 31, 2024. Docket No. 52 (the "October MOR"). The October MOR acknowledges that payments were made to or on behalf of insiders. The October MOR also shows that the Debtor transferred at least $100,000 to its insider, Talis. Id. at pg. 14.

MCM admits the factual statements contained in **Paragraph 17**.

18. **Paragraph 18** of the *Motion* provides:

Also on December 20, 2024, the Debtor filed a monthly operating report that covered the period of November 1, 2024 through November 30, 2024. Docket No. 53 (the "November MOR"). The November MOR acknowledges that payments were made to or on behalf of insiders. The Chase Bank statement attached to the November MOR shows $718,984.96 in checks paid, but a check ledger is not attached to the report. Id.

MCM admits the factual statements contained in **Paragraph 18**.

19. **Paragraph 19** of the *Motion* provides:

The November MOR reflects a $1,271.00 payment on November 27, 2024 to "Mbfs" for "Maribel Marquez Automobile Payment" and a $1,256.79 payment on November 29, 2024 to TD Auto Finance for "Jose Marquez Automobile Payment." Id. at pgs. 18-19. Upon information and belief, it appears that the estate is paying for the owners' car payments.

MCM admits the factual statements contained in **Paragraph 19**.

20. **Paragraph 20** of the *Motion* provides:

On January 14, 2025, the U.S. Trustee emailed Debtor's counsel again requesting certain information and that amendments be made to the Schedules and SOFA. **Exhibit F.** The Debtor provided some, but not all of the information requested by the U.S. Trustee. The Debtor did not amend its Schedules and SOFA to include all of its assets and pre-petition transfers, including payments to insiders.

MCM admits the factual statements contained in **Paragraph 19**.

21. **Paragraph 21** of the *Motion* provides:

On February 13, 2025, the Debtor filed a monthly operating report that covered the period of December 1, 2024 through December 301 2024. Docket No. 73 (the "December MOR"). The Chase Bank statement attached to the December MOR shows $209,414.08 in checks paid, but a check ledger is not attached to the report. Id. The December MOR also reflects two $1,256.79 payments on December 28 and December 30, 2024 to TD Auto Finance for "Jose Marquez Automobile Payment." Id. at pgs. 17-18.

MCM admits the factual statements contained in **Paragraph 21**.

22.     **Paragraph 22** of the *Motion* provides:

As of the filing of this Motion, the U.S. Trustee has reasonably requested the following items but has not received the documents or amendments from the Debtor:

    a.   Documents justifying the transfer of over $500,000 to Talis during the month of September 2024;

    b.   Information regarding the $4,014,413.49 intercompany loan to Talis;

    c.   Work orders, invoices, or other documents from the 30 days prior to the petition date through December 31, 2024 to justify post-petition transfers made to Talis;

    d.   Check ledgers and/or financial statements to categorize the Debtor's expenses for September through November 2024;

    e.   Amended § 1116 disclosures including the 2023 financial documents;

    f.   Amended Schedule A/B and SOFA to accurately disclose which bank accounts were open as of the petition date and which accounts were closed prepetition;

    g.   Amendments to SOFA #3, 4, and 13 to disclose payments made to insiders and payments to creditors over $7,575 in the 90 days prior to filing, and the sale of a Ford Truck in the two years prior to filing;

    h.   Check ledgers for the bank statements attached to the October and November MORS;

    i.   Information regarding the $500,000 in "ERC" (possible employee retention credits) listed on the balance sheet but not on Schedule A/B;

    j.   Information regarding the $136,820 in "shareholder advances" listed on the balance sheet but not on Schedule A/B; and

    k.   Information regarding the $71,650 owed from Tumbleweed Services to the Debtor that is not on Schedule A/B.

    MCM has provided the following information.

a)  Invoices to justify the Transfers of over $500,000 to Talis.
b)  Information regarding the intercompany transfers and the incorrect reporting of the amount owed to MCM from Talis.
c)  Invoices from Talis to MCM for post-petition transfers.

d) Check ledgers attached to the Operating Reports.
e) Amended 1116 filed see doc. 95
f) Amended schedules showing all active banks as of the date of petition
g) Amended schedules showing payments made to creditors within the 90 days prior to filing.
h) Check Ledgers attached and Amended Operating Reports were filed.
i) ERC Credit included in Schedule A/B as money owed to debtor.
j) Any shareholder advances would be repaid to the Estate.
k) Tumbleweed is no longer operational. Vehicles were given to MCM in satisfaction of debt owed.

## IV.  LEGAL ARGUMENT

23.     **Paragraph 23** of the *Motion* provides:

Section 1112(b) of the Bankruptcy Code provides that the Court shall dismiss or convert a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes "cause," unless the court determines that appointment of a trustee or examiner under 11 U.S.C. § 1104(a) is in the best interests of creditors and the estate. "The Code does not define 'cause,' but Section 1112(b)(4) provides a non-exhaustive list of examples of 'cause' that would support dismissal or conversion." *In re Baribeau*, 603 B.R. 797, 802 (Bankr. W.D. Tex. 2019).

MCM admits the factual statements contained in **Paragraph 23**.

24.     **Paragraph 24** of the *Motion* provides:

Under 11 U.S.C. § 1112(b)(4), "cause" includes:

(B) gross mismanagement of the estate;
        * * * * *
    (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any) . . . .; and
        * * * * *
        (K) failure to pay any fees or charges required under chapter 123 of title 28.
11 U.S.C. §§ 1112(b)(4)(B), (H), (K).

No response is necessary for **Paragraph 24**.

25.     **Paragraph 25** of the *Motion* provides:

"The Court must also consider the totality of the circumstances" when determining whether "cause" exists to dismiss or convert a case under U.S.C. § 1112(b)(1). *In re Baribeau*, 603 B.R. at 802 (citing *Matter of T-H Orleans, L.P.*, 116 F.3d 790, 802 (5th Cir. 1997)). The Court's inquiry

under 11 U.S.C. § 1112 is "case-specific, focusing on the circumstances of each debtor." *In re Timbers of Inwood Forest Assoc., Ltd.,* 808 F.2d 363, 371-72 (5th Cir. 1987).

No response is necessary for **Paragraph 25**.

**A.     The Court Should Dismiss or Convert This Case to Chapter 7 Because the Debtor is Grossly Mismanaging the Estate.**

26.     **Paragraph 26** of the *Motion* provides that:

This case should be dismissed or converted to a case under chapter 7 because, upon information and belief, the Debtor has been grossly mismanaging the estate.     Section 1112(b)(4)(B) of the Bankruptcy Code provides that gross mismanagement of the estate is "cause" for dismissal or conversion. 11 U.S.C. § 1112(b)(4)(B). The Code does not define "gross mismanagement," but courts have found that "mismanagement of the estate may include a failure by a debtor to comply with requirements of the Bankruptcy Code." *In re Moultrie*, 586 B.R. 498, 504 (Bankr. N.D. Ga. 2018).

In response to **Paragraph 26**, MCM denies that it has "grossly-mismanaged" the Estate.

MCM appreciates that it is vested with significant power under the Bankruptcy Code, and with

great power comes great responsibility. MCM has used that responsibility to reach near global

resolution of Pioneer Bank's and the IRS' claims against it, as well as preserve assets subject to

the liens of these two secured creditors.

27.     **Paragraph 27** of the *Motion* provides:

"A debtor-in-possession is vested with significant power under the Bankruptcy Code and that power comes with certain responsibilities." *In re Ozcelebi*, 639 B.R. 365, 388 (S.D. Tex. 2022) (citations omitted). "A debtor-in-possession owes a fiduciary duty to its creditors." *Id.* Gross mismanagement of the estate is a breach of a debtor-in-possession's fiduciary duty. *Id.*

In response to **Paragraph 27**, MCM denies that it has "grossly-mismanaged" the Estate.

MCM appreciates that it is vested with significant power under the Bankruptcy Code, and with

great power comes great responsibility. MCM has used that responsibility to reach near global

resolution of *Pioneer Bank's* and the IRS' claims against it, as well as preserve assets subject to

the liens of these two secured creditors.

28.    **Paragraph 28** of the *Motion* provides:

The Debtor, as a fiduciary of the bankruptcy estate, must take appropriate action to preserve valuable assets of the bankruptcy estate. "To fulfill one's fiduciary duties as debtor-in-possession, a debtor must 'protect and conserve property in its possession for the benefit of creditors.'" *In re Ozcelebi,* 639 B.R. at 394 (citing *In re Cajun Elec. Power Co-op, Inc.,* 191 B.R. 659, 661 (M.D. La. 1995), *aff'd* 74 F.3d 599 (5th Cir. 1996)).

In response to **Paragraph 28**, MCM would show that all assets are insured and preserved.

First, they are insured. Second, they are subject to the liens of the IRS and Pioneer Bank; and as

such, these secured creditors are aware of the location, use, and condition of their collateral.

29.    **Paragraph 29** of the *Motion* provides:

In this case, the Debtor has, on a post-petition basis, engaged in numerous transactions with an insider, affiliated entity, Talis. When counsel for the U.S. Trustee requested documents to substantiate the purpose of those transfers, the Debtor has failed to produce any. Post-petition, the Debtor transferred over $500,000 to Talis in the month of September alone. This fact is indicative of gross mismanagement. *See., e.g.,* *In re Visicon Shareholders Trust*, 478 B.R. 292, 309-10 (Bankr. S.D. Ohio 2012) (finding that the debtor's payment of insider's personal expenses constituted gross management).

30.    **Paragraph 30** of the *Motion* provides:

Second, the Debtor's financial records indicate that the Debtor is owed large sums from insiders. For example, the balance sheet attached to the September MOR discloses the following assets:

a.   "Loan to Shareholder"              $214,107.60

b.   "Due from Talis-Intercompany"      $4,014,413.49

c.   "Due from TWS"[1]                   $71,560.00

d.   "Shareholder Advances"             $136,820.97

*See*, Docket No. 34, pg. 5.

MCM does not object to this statement as set forth subject to further review of its books and records.

31. **Paragraph 31** of the *Motion* provides:

The U.S. Trustee requested documents regarding those insider loans and advances. In response, the Debtor's counsel asserts that the amounts listed in the balance sheet are not correct and, therefore, the Debtor will not be listing the amounts due on Schedule A/B or pursuing recovery of those balances. Thus, the Debtor either is unable to maintain accurate financial records or the Debtor will not seek to recover large sums owed by insiders. Either scenario is gross mismanagement. *See, e.g.*, *In re 210 West Liberty Holdings*, Case No. 2009 WL 1522047 *6 (Bankr. N.D. W. Va. May 29, 2009) (refusal to collect $81,830 in rent owed by an insider is gross mismanagement); *Visicon Shareholders Trust*, 478 B.R. at 310 (finding that the failure to maintain accurate books and records or adequately review records on a post-petition basis constitutes gross mismanagement).

In response to **Paragraph 31**, MCM will seek to recover any and all amounts due the Estate - it is in MCM's best interest to do so to address the large secured claims held by the IRS and Pioneer Bank. Moreover, both the IRS and Pioneer Bank hold liens on these receivable.

32. **Paragraph 32** provides:

Third, the Debtor has failed to file accurate schedules and an accurate SOFA despite multiple requests made by the U.S. Trustee to correct errors.

In response to **Paragraph 32**, more accurate *Schedules* and SOFA were filed on **April 7, 2025**. Prior to filing these, MCM forwarded them to the UST on **April 1, 2025** for the UST's review. After receiving additional and constructive UST comments, they were filed. S**ee Doc. No. 108.**

33. **Paragraph 33** provides:

Fourth, the Debtor's owners appear to be using the Debtor's funds for their personal expenses, including the owners' car payments and meals out at restaurants. These expenses do not benefit the estate and further demonstrate gross management. For these reasons, the Court should find "cause" to dismiss or convert this case. 11 U.S.C. § 1112(b)(4)(B).

MCM objects to the assertions in **Paragraph 33**. Paying for "meals at restaurants" is typical in the oil field services industry as employees and customers are commonly taken to eat out, especially to sign payment invoices. Moreover, when employees are traveling on behalf of MCM, they eat out. Both Angel Marquez and Maribel Marquez work for MCM, Angel in charge of operations and Maribel in charge of finances. As far as the "owners car payments", the vehicle used by Angel Marquez is owned by him personally but used exclusively for MCM. When the vehicle was acquired, MCM did not have sufficient credit-worthiness to obtain financing; but Angel Marquez did, and was able to purchase it under his credit. Since it was to be used by MCM, it is not fraud or conversion for MCM to make payments on the auto loan.

**B.      There is Cause to Dismiss or Convert This Case Under 11 U.S.C. § 1112(b)(4)(H) Because the Debtor Has Repeatedly Failed to Timely Provide Information Reasonably Requested by the U.S. Trustee.**

34.      **Paragraph 34** provides:

Cause exists to dismiss or convert this case under 11 U.S.C. § 1112(b)(4)(H) because the Debtor has not provided sufficient responses to multiple reasonable requests for information made by the U.S. Trustee. *See*, *In re Westgate Prop., Ltd.*, 432 B.R. 720, 724 (Bankr. N.D. Ohio 2010).

MCM objects to the assertions made in **Paragraph 34**.

35.      **Paragraph 35** provides:

At the meetings of creditors on October 3 and October 22, 2024, counsel for the U.S. Trustee requested documents in support of post-petition transfers of over $500,000 made to insider Talis in September 2024.

MCM admits to the statement in **Paragraph 35**.

36.      **Paragraph 36** provides:

Counsel for the U.S. Trustee emailed Debtor's counsel again on October 31, 2024, November 29, 2024, and January 14, 2025 requesting documents to support post-petition transfers to insider

Talis, including subcontracting agreements and invoices. *See*, **Exhibits D, E, and F.** To date, the Debtor has not provided any documents in response. Based on this failure to produce reasonably requested information, there is "cause" to dismiss or convert this case under 11 U.S.C. § 1112(b)(4)(H).

To date, MCM has provided the following documents and information to the UST:

Invoices showing between Talis and MCM

Amended schedules

### C.  The Court Should Dismiss or Convert This Case for Failure to Pay U.S. Trustee Quarterly Fees.

37.  **Paragraph 37** provides:

Pursuant to 28 U.S.C. § 1930(a)(6), a chapter 11 debtor is required to pay quarterly fees until the case is converted, dismissed, or closed. Failure to pay such fees is "cause" for dismissal. 11 U.S.C. § 1112(b)(4)(K); *In re Chandni, LLC*, 570 B.R. 530, 532 (Bankr. W.D. La. 2017).

MCM admits the factual assertion contained in **Paragraph 37** but despite non-payment of Quarterly Fees constituting "cause", it objects to the conversion or dismissal of the case.

As described above, the delay in obtaining the release of substantial but uncollected accounts receivable has strained its cash flow. However, with the help of Pioneer Bank and the IRS, the release of outstanding receivable is underway, and immediately upon release of the funds from XTO, it will immediately satisfy all outstanding Quarterly Fees. Moreover, if the case were to convert to Chapter 7, there would be no payment of Quarterly Fees as the IRS and Pioneer Bank have liens on the receivables.

38.  **Paragraph 38** provides:

As of the filing of this Motion, the Debtor owes an estimated sum of $24,624.00 in quarterly fees. Those fees were due and owing as of January 31, 2025.

MCM admits the factual assertion contained in **Paragraph 38**. As described above, the delay in obtaining the release of almost $1 million dollars in earned but uncollected accounts

receivable has strained its cash flow. However, with the help of Pioneer Bank and the IRS, the release of outstanding receivable is underway, and immediately upon release of the funds from XTO, it will immediately satisfy all outstanding Quarterly Fees. Moreover, if the case were to convert to Chapter 7, there would be no payment of Quarterly Fees as the IRS and Pioneer Bank have liens on the receivables.

39.     **Paragraph 39** provides:

On February 5, 2025, the U.S. Trustee sent the Debtor written notice that it was delinquent on its quarterly fees. To date, the Debtor has not cured the past due balance.

MCM admits the factual assertion contained in **Paragraph 39**. As described above, the delay in obtaining the release of almost $1 million dollars in earned but uncollected accounts receivable has strained its cash flow. However, with the help of Pioneer Bank and the IRS, the release of outstanding receivable is underway, and immediately upon release of the funds from XTO, it will immediately satisfy all outstanding Quarterly Fees. Moreover, if the case were to convert to Chapter 7, there would be no payment of Quarterly Fees as the IRS and Pioneer Bank have liens on the receivables.

## V.     CONCLUSION

40.     As set forth herein, there is "cause" for this Court to dismiss or convert this case under 11 U.S.C. § 1112. The U.S. Trustee recommends that the Court convert this case to a case under chapter 7 so that a disinterested chapter 7 trustee can liquidate the Debtor's assets in a timely manner to pay creditors. Because the September, October, November, and December MORs

reflect multiple unjustified transactions — including large transfers to insiders — being conducted through the debtor-in-possession account, the U.S. Trustee contends that having a chapter 7 trustee administer the estate would ensure that the sale of assets and distributions to creditors are in compliance with the Bankruptcy Code.

In response to **Paragraph 40**, MCM objects to conversion of the case for the reasons set forth herein. All assets are encumbered in favor of the Internal Revenue Service, Pioneer National Bank, as well as equipment lenders. The transactions were not "unjustified". "Unjustified" is defined as "not demonstrably correct or judicious: not warranted or appropriate". See https://www.merriam-webster.com/dictionary/unjustified. The transfers were not "unjustified". They were necessary for MCM's continuing operations based on its structure with TALIS. Moreover, a sale of assets would most likely not satisfy the secured creditors in full; probably only partially. MCM's assets consist of used oil field construction equipment, i.e., trucks, machinery, etc. There is no real estate owned by MCM. There are accounts receivable, but they are fully encumbered by the liens of the IRS and Pioneer Bank. Moreover, upon conversion, MCM would cease operations, thereby generating no more receivables; upon conversion, there is a very limited pie from which to feed secured creditors, much less general unsecured creditors.

41.    In the event of conversion, the U.S. Trustee requests that the Court order the Debtor to comply with the provisions of Bankruptcy Rule 1019 and file all monthly operating reports due pursuant to Rule 2015(a)(5). In the event of dismissal, the U.S. Trustee requests that the order provide for the filing of all outstanding monthly operating reports and to pay all outstanding quarterly fees.

MCM objects to the conversion or dismissal of the Chapter 11 case for the reasons set forth herein.

WHEREFORE, *Marquez Construction & Maintenance, LLC* respectfully requests that the Court deny this *Motion*, and for other and further relief as may be just and proper.

Respectfully Submitted,
**MIRANDA & MALDONADO, P.C.**

/s/ Carlos A. Miranda, Esq.
Carlos A. Miranda, Esq.
5915 Silver Springs, Bldg. 7
El Paso, Texas 79912
(915) 587-5000 (Telephone)
(915) 587-5001 (Facsimile)
**cmiranda@eptxlawyers.com**

Counsel for Debtor

## CERTIFICATE OF SERVICE

I hereby certify that in this, the 9th day of April 2025, I served a true and correct copy of the foregoing instrument as listed on the Court's ECF noticing system to the Parties on the attached Matrix.

*/s/ Carlos A. Miranda*
Carlos A. Miranda, Esq.

Label Matrix for local noticing
0542-3
Case 24-31042-cgb
Western District of Texas
El Paso
Fri Sep 27 12:05:31 CDT 2024

Marquez Construction and Maintenance, LLC
2751 S. US HWY 385
Odessa, TX 79766-2118

United States Trustee - EP12 12
U.S. Trustee's Office
615 E. Houston, Suite 533
San Antonio, TX 78295-1601

U.S. BANKRUPTCY COURT
511 E. San Antonio Ave., Rm. 444
EL PASO, TX 79901-2417

Absolute Valve Repair, LLC
c/o G. William Fowler
3800 E. 42nd St., Suite 604
Odessa, TX 79762-5989

Ally Bank
4515 N. Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

AmeriCredit Financial Services, Inc. dba GM
P O Box 183853
Arlington, TX 76096-3853

BM Vacuum, Inc.
c/o G. William Fowler
3800 E. 42nd St., Suite 604
Odessa, TX 79762-5989

CHRYSLER CAPITAL
P.O. BOX 961275
FORT WORTH, TX 76161-0275

Capital One
Attn: Bankruptcy
P.O. Box 30285
Salt Lake City, UT 84130-0285

(p)CATERPILLAR FINANCIAL SERVICES CORPORATION
2120 WEST END AVENUE
NASHVILLE TN 37203-5341

(p)LINEBARGER GOGGAN BLAIR & SAMPSON LLP
ATTN DON STECKER
112 E PECAN
SUITE 2200
SAN ANTONIO TX 78205-1588

Community National Bank
P.O. Box 3903
Midland, TX 79702-3903

Comptroller of Public Accounts
C/O Office of the Attorney General
Bankruptcy - Collections Division MC-008
PO Box 12548
Austin TX 78711-2548

Ector County CAD
c/o Karalyssa Casillas
112 E Pecan St., Suite 2200
San Antonio, TX 78205-1588

Flatland Holding d/b/a RK Supply
c/o Matthew C. Jameson
5429 LBJ Freeway, Suite 300
Dallas, Texas 75240-2645

Flatland Holding, LLC d/b/a RK Supply
c/o Matthew C. Jameson
5429 LBJ Freeway, Suite 300
Dallas, TX 75240-2645

GM Financial
801 Cherry St., Suite 3600
Fort Worth, TX 76102-6855

H & E EQUIPMENT SERVICES, INC
7500 PECUE LANE
BATON ROUGE, LA 70803-0001

H L Chapman Pipeline Construction, Inc.
9250 FM 2243
Leander, Texas 78641-1624

Internal Revenue Service
Centralized Insolvency Office
P. O. Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service (IRS)
Centralized Insolvency Office
P. O. Box 7346
Philadelphia, PA 19101-7346

JP Morgan Chase Bank, N.A.
P.O. Box 9013
Addison, Texas 75001-9013

JPMorgan Chase Bank, N.A.
s/b/m/t Chase Bank USA, N.A.
c/o National Bankruptcy Services, LLC
P.O. Box 9013
Addison, Texas 75001-9013

Jamie Kirk
Bankruptcy & Collections Division
12221 Merit Drive, Suite 825
Dallas, Texas 75251
jamie.kirk@oag.texas.gov 75251-2244

Pioneer Bank
c/o Ryan J. Bigbee
P.O. Box 53068
Lubbock, TX 79453-3068

Pioneer Bank, FSB
Attn: Aaron Emmert/Adriann Ragsdale
PO Box 609
Las Cruces, NM 88004-0609

Premier Trenching, LLC
7814 Miller Rd. 3
Houston, TX 77049-1734

ProLift Rigging Company, LLC
c/o Manning, Price & Stern
P.O. Box 947371
Atlanta, GA 30394-7371

STEVEN B. BASS
Assistant United States Attorney
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701-2449

Santander Consumer USA
P.O Box 560284
Dallas, TX 75356-0284

Small Business Adminstration
Little Rock Commercial Loan Servicing
Center 2120 Riverfront Drive, Suite 100
Little Rock, AR 72202-1794

Stellantis Financial
3065 Akers Mill Rd SE Suite 700
Atlanta, GA 30339-3124

Superior Hydrovac Solutions, LLC
c/o Hamm Law Group, PLLC
3000 N. Garfield, Suite 205
Midland, TX 79705-6461

TD Bank, N.A.
P.O. Box 551080
Jacksonville, FL 32255-1080

TEXAS WORKFORCE COMMISSION
OFFICE OF ATTORNEY GENERAL
BK/COLLECTIONS
P.O. BOX 12548, MC008
AUSTIN, TX 787112548

(p)TEXAS COMPTROLLER OF PUBLIC ACCOUNTS
REVENUE ACCOUNTING DIV - BANKRUPTCY SECTION
PO BOX 13528
AUSTIN TX 78711-3528

Texas Workforce Commission
TWC Building - Regulatory Integrity Divi
101 East 15th Street
Austin, TX 78778-0001

United States Attorney General
Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530-0009

United States Attorney, Civil Process Clerk
Department of Justice
601 N. W. Loop 410, Suite 600
San Antonio, TX 78216-5512

United States Trustee's Office
615 E. Houston, Ste. 533
P.O. Box 1539
San Antonio, TX 78295-1539

UnitedHealthcare Insurance Company
185 Asylum St. - 03B
Hartford, CT 06103-3408

UnitedHealthcare Insurance Company
Attn:  CDM/Bankruptcy
185 Asylum Street - 03B
Hartford, CT 06103-3408

Wells Fargo Bank, N.A.
800 Walnut Street
MAC F0006-51
Des Moines, IA 50309-3605

Wells Fargo Bank, N.A.
P.O. Box 29482 MAC S4101-08C
Phoenix, AZ 85038-9482

Carlos A. Miranda
Miranda & Maldonado, P.C.
5915 Silver Springs
Bldg. 7
El Paso, TX 79912-4126

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Caterpillar Financial Services Corporation
2120 West End Ave.
Nashville, TN 37203

City of El Paso
c/o Don Stecker
Weston Centre, 112 E. Pecan St., Ste. 22
San Antonio, TX 78205-1588

(d)ECTOR CAD
c/o  Karalyssa Casillas
112 E Pecan Street, Suite 2200
San Antonio, TX 78205

Texas Comptroller of Public Accounts
Revenue Accounting Div - Bankruptcy Sect
P.O. Box 13528
Austin, TX 78711-3528

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(d)Chrysler Capital              (d)H&E Equipment Services      End of Label Matrix
P.O. Box 961275                  7500 Pecue Lane                Mailable recipients    45
Fort Worth, TX 76161-0275        Baton Rouge, LA 70803-0001     Bypassed recipients     2
                                                                Total                  47
```