**Dated: November 25, 2025.**

_____
**CHRISTOPHER G. BRADLEY
UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| MARQUEZ CONSTRUCTION | § | Case No. 24-31042-cgb |
| AND MAINTENANCE, LLC, | § | Chapter 7 |
| Debtor. | § | |

**MEMORANDUM OPINION AND ORDER REGARDING OSC ENERGY, LLC'S APPLICATION FOR ALLOWANCE AND PAYMENT OF POST-PETITION ADMINISTRATIVE EXPENSE CLAIM [ECF NO. 150]**

## Introduction

A creditor asserts an administrative expense priority claim (meaning its claim would be paid before other unsecured creditors) because it provided post-petition rental equipment and services to the debtor. The debtor entered into the rental services contract after it filed chapter 11 bankruptcy. While the contract was still ongoing and the creditor's equipment still onsite, the case was converted from a reorganization under chapter 11 to a liquidation under chapter 7 and the debtor stopped operating. The creditor's claim spans both the pre- and post-conversion periods.

The Court holds, first, that the creditor's claim was timely because no deadline was set for filing administrative claims, and in any case, the creditor received no notice of the bankruptcy. Second, the entirety of the creditor's claim is entitled to administrative expense status, because when a chapter 11 debtor enters into a contract, all expenses resulting from that contract—even those arising after a conversion to a chapter 7 liquidation—should be treated as administrative expenses. That said, while the claim is entitled to chapter 11 administrative claim status, it must be denied the higher-priority chapter 7 administrative claim status, because the creditor's goods and services neither benefitted the chapter 7 estate nor were they sought or accepted by the chapter 7 trustee.

## Background

On August 28, 2024, Marquez Construction and Maintenance, LLC (the "Debtor") filed this case under chapter 11.[1] When the case was filed, the Debtor provided oil field services.[2] To facilitate continued operations, the Debtor entered into a post-petition rental agreement (the "Rental Agreement") with OSC Energy, LLC ("OSC").[3] When the Debtor entered into the Rental Agreement, it did not inform OSC that it was in bankruptcy.[4] Under the Rental Agreement, OSC provided the Debtor with equipment, diesel fuel, and pickup/delivery services between December 12, 2024 and May 2, 2025.[5]

In February 2025, the United States Trustee filed a motion to convert or dismiss the case under 11 U.S.C. § 1112(b).[6] On April 11, 2025, the Court entered an order that converted the case from a reorganization under chapter 11 to a liquidation under chapter 7.[7] Aldo Lopez (the "Trustee") was appointed the chapter 7 trustee and the Debtor stopped operations.[8] On June 27, 2025, the Debtor filed amended schedules that did not list OSC as a creditor.[9]

---

[1] Voluntary Pet., ECF No. 1.
[2] Mot. to Use Cash Collateral, ECF No. 4, ¶ 4.
[3] Appl., ECF No. 150, Ex. 1 (Rental Agreements and invoices for equipment and services from 12/12/24 – 5/2/25). There may have been multiple agreements but for convenience, and in line with the parties' approach, the court will refer to it as one agreement.
[4] Orta Test., Sept. 11, 2025.
[5] *Id*.
[6] Mot. to Convert, ECF No. 77.
[7] Order Granting Mot. to Dismiss, Ex. 5, ECF No. 115.
[8] Trustee Resp. to Appl., ECF No. 154, ¶ 7; Marquez Test., Sept. 11, 2025.
[9] Am. Schedules, Ex. 5, ECF No. 115.

On July 1, 2025, OSC filed a notice of appearance in the bankruptcy case.[10] Two weeks later, on July 16, 2025, OSC filed *OSC Energy, LLC's Application for Allowance and Payment of Post-Petition Administrative Expense Claim* (the "Application").[11] The Application asked the Court to allow OSC a $151,370.83 administrative expense claim.[12] Creditor Pioneer Bank ("Pioneer") and the Trustee both filed objections to the Application primarily arguing that the Application was untimely and that the expenses did not benefit the estate.[13] The Court held a hearing on the Application on September 11, 2025. The uncontroverted evidence at the hearing was that OSC did not learn about the Debtor's bankruptcy case until well after the case was converted.[14] At the conclusion of the hearing, the Court took the Application under advisement.

## Analysis

Determining the appropriate treatment of OSC's claim is somewhat complicated because the period during which OSC provided equipment and services spans the Debtor's stay under two separate chapters of the Bankruptcy Code— chapter 11 (reorganization) and chapter 7 (liquidation). But to start, the Court must first decide the less prickly issue of whether the Application was timely.

### A. The Application is timely because no bar date was set and, in addition, OSC never received notice of the bankruptcy.

Under Rule 1019(f) of the Federal Rules of Bankruptcy Procedure, administrative claim requests are timely if filed prior to conversion or within a time set by the court.[15] Courts have found that the "time set by the court" is the deadline set for filing claims in the chapter 7 case.[16] On April 11, 2025, the Court sent out a notice advising creditors of the chapter 7 case and stating "[n]o property appears to be available to pay creditors. Therefore, please do not file a proof of claim now. If it later appears that assets are available to pay creditors, the clerk will send you another notice telling you that you may file a proof of claim and stating the deadline." To

---

[10] OSC Notice, ECF No. 145.
[11] Appl., ECF No. 150.
[12] *Id.*
[13] Resps., ECF Nos. 153, 154.
[14] Orta Decl., OSC Ex. 1; Orta Test., Sept. 11, 2025.
[15] Fed. R. Bankr. P. 1019(f).
[16] *In re Forrest Marbury House Assocs. Ltd. P'ship*, 163 B.R. 1, 2 (Bankr. D.C. 1993) ("[W]hen a chapter 11 case is converted to chapter 7, holders of administrative claims from the chapter 11 case must file claims by the bar date for filing claims in the chapter 7 case….").

date, a proof of claim bar date has not been set in the chapter 7 case, but the Trustee has not yet filed a no asset report, so a deadline may still be set.

In their objections, the Trustee and Pioneer argue that the Court should deny the Application as untimely because it was not filed before the conversion date and the Court had not set another deadline. Indeed, the case was converted on April 11, 2025, and the Application was not filed until July 16, 2025.

However, the Court finds that the Application should be considered timely. Although there is currently no deadline for filing claims, if it appears that there are assets to distribute, a deadline will be set and OSC's application would certainly be timely under that deadline. Even if a deadline had been set and OSC had missed it, the deadline should be extended under Bankruptcy Rule 9006(b), which grants courts authority to extend deadlines for cause, because OSC showed through uncontroverted testimony that it did not receive notice of the bankruptcy case until well after the case had been converted.[17] After OSC received notice of the bankruptcy, it promptly filed the Application. Thus, the Court finds that the Application is timely.

### B. The post-petition, pre-conversion, expenses are chapter 11 administrative expenses because they benefitted the chapter 11 estate.

To avoid undue disruption of operations during a chapter 11 case, a chapter 11 trustee or debtor in possession "may enter into transactions" and "use property of the estate" in the ordinary course of business without court approval.[18] However, third parties understandably may hesitate to provide credit, goods, and services to a bankruptcy estate out of fear that they may not be paid. To incentivize third parties to work with entities in bankruptcy, the Bankruptcy Code grants priority treatment to certain "administrative expenses" that arise during the case, meaning that claims

---

[17] Fed. R. Bankr. P. 9006(b) (allowing courts to extend deadlines for cause shown). The fact that OSC did not have notice of the bankruptcy does not change the analysis governing whether it should be allowed an administrative claim. The Bankruptcy Code generally protects post-petition creditors when they enter into agreements with the bankruptcy estate. Just because OSC did not know that it needed such protections does not mean that it is not entitled to them. And allowing OSC's claim administrative priority status encourages it and similarly situated parties to work with other debtors in the future.

[18] 11 U.S.C. § 363(c)(1) ("If the business of the debtor is authorized to be operated under section 721, 1108, 1183, 1184, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.").

for those expenses are paid before virtually any other claims.[19] Specifically, under sections 503(a) and (b)(1)(A) of the Code, an entity may request priority payment of claims for "the actual, necessary costs and expenses of preserving the estate."[20]

To qualify as an administrative expense, an "actual and necessary cost" must arise "post-petition and as a result of actions taken by the [debtor in possession] that benefitted the estate."[21] In other words, the expense (1) must arise from a transaction with the bankruptcy estate and (2) must have benefitted the estate.[22]

### 1. The Rental Agreement arose from a transaction with the bankruptcy estate.

In the Fifth Circuit, "a creditor can establish that its expenses are attributable to the actions of the bankruptcy estate through evidence of either a direct request from the debtor-in-possession or other inducement via the knowing and voluntary post-petition acceptance of desired goods or services."[23]

This first requirement for administrative expense priority treatment is easily met here and does not seem to be in dispute. The uncontroverted testimony solicited during the hearing is that the Rental Agreement was entered into on request of the Debtor, as debtor in possession, after the petition date and before the case was converted. Indeed, all the invoices show that they were for post-petition services.

---

[19] 11 U.S.C. §§ 503(b), 507; *Nabers Offshore Corp. v. Whistler Energy II, L.L.C. (In re Whistler Energy II, L.L.C.)*, 931 F.3d 432, 441-42 (5th Cir. 2019).

[20] 11 U.S.C. § 503.

[21] *Nabers Offshore Corp.*, 931 F.3d at 441 (quoting *Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001)).

[22] *Id.*; *see also Toma Steel Supply, Inc. v. TransAmerican Natural Gas Corp. (In Matter of TransAmerican Natural Gas Corp.)*, 978 F.2d 1409, 1416 (5th Cir. 1992) (finding that a "prima facie case under § 503(b)(1) may be established by evidence that (1) the claim arises from a transaction with the debtor-in-possession; and (2) the goods or services supplied enhanced the ability of the debtor-in-possession's business to function").

[23] *Nabers Offshore Corp*, 931 F.3d at 443 (citing *In re Mammoth Mart, Inc.*, 536 F.2d 950, 955 (1st Cir. 1976) (explaining that "[w]hen the debtor-in-possession . . . accepts services from a third party without paying for them, the debtor-in-possession itself caused legally cognizable injury, and the resulting claims for compensation are entitled to first priority"); *Commercial Fin. Servs.*, 246 F.3d 1291, 1295 (10th Cir. 2001) (noting that employees received full compensation for their post-petition services); *In re Jartran*, 732 F.2d 584, 588 (7th Cir. 1984) ("[P]resumably, if the debtor had used one of the airline tickets after the petition was filed, the airline would have been entitled to administrative priority.").

Thus, the expenses arose post-petition through actions of the Debtor and therefore, the bankruptcy estate.

### 2. All of the pre-conversion expenses incurred under the Rental Agreement benefitted the chapter 11 estate.

Administrative expenses are granted priority because a debtor's inability to secure credit or otherwise continue business would likely harm the debtor's other creditors.[24] These expenses include "costs ordinarily incident to operation of a business" and are "not limited to costs without which rehabilitation would be impossible."[25]

In its *Nabers* decision, the Fifth Circuit has aptly summarized the principles by which this case can be decided: "When certain goods or services will benefit the bankruptcy estate, administrative priority enables the debtor-in-possession to transact for that benefit in the same manner as a solvent enterprise. This requires paying the full and ordinary cost of such goods and services, including overhead and incidental expenses. Absent full payment, creditors would have little incentive to do business with the debtor-in-possession. If a debtor-in-possession decides to rent equipment for its business, for example, it cannot later evade those rental payments by asserting that it did not end up needing the equipment after all."[26] Indeed "conducting business as usual often requires that certain goods or services be available, even if ultimately not used."[27] Therefore, "when the debtor-in-possession induces availability and the bankruptcy estate derives a benefit from it, the ordinary cost of ensuring such availability qualifies as an administrative expense."[28]

---

[24] *Nabers Offshore Corp.*, 931 F.3d at 441-42.
[25] *Reading Co. v. Brown*, 391 U.S. 471, 483 (1968).
[26] *Nabers Offshore Corp.*, 931 F.3d at 443-44 (citing *In re Airlift Int'l, Inc.*, 761 F.2d 1503, 1510 (11th Cir. 1985), for the proposition that "mortgagees 'cannot be expected to forego their right of repossession unless they are guaranteed payment by the terms of the agreement during the time the aircraft remains in the possession of the debtor,'" and *Kimzey v. Premium Casing Equip., LLC*, No. 16-1490, 2018 WL 1321971, at *7 (W.D. La. March 14, 2018), for the holding that "because the debtor in possession 'made an affirmative business decision' to retain certain equipment, '[t]he fact that the two local managers ... did not take advantage of the available equipment is immaterial'). Nor can a debtor in possession "argue that a specific line item expense that goes into providing a service did not directly benefit the estate." *In re ATP Oil & Gas Corp.*, No. 12-36187, 2014 WL 1047818, at *9 (Bankr. S.D. Tex. March 18, 2014).
[27] *Nabers Offshore Corp*, 931 F.3d at 444.
[28] *Id*.

By renting the Debtor equipment and providing services post-petition, OSC allowed the Debtor to continue operating and earning revenue, which clearly provided a benefit to the chapter 11 bankruptcy estate, and by extension the Debtor's creditors, at least through the date this case was converted, April 11, 2025. Furthermore, the Debtor, by deciding to enter into the contracts, indicated that it believed that they were necessary to its operations and thus beneficial to its reorganization efforts. The Court will not second-guess this decision after the Debtor has already received the benefits from those contracts to the detriment of OSC. Consequently, OSC is entitled to a chapter 11 administrative expense for the pre-conversion rental expenses and services.

3. **The post-conversion expenses are also chapter 11 administrative expenses because they benefitted the chapter 11 estate as expenses that came due under contracts duly entered into by the chapter 11 debtor for the benefit of the estate.**

Chapter 11 administrative claims generally preserve their status upon conversion to chapter 7, even though they are subordinated to chapter 7 administrative expenses (as discussed in the following section). Section 348(d) provides "[a] claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under [section 1112] of this title, *other than a claim specified in section 503(b) of this title*, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition."[29]

Whether to award chapter 11 administrative claim treatment to expenses that (a) were agreed to in a post-petition, pre-conversion contract but that (b) arise post-conversion does not appear to be often litigated. But the answer ultimately seems clear: Yes, all expenses under a post-petition contract are entitled to administrative claim treatment, whether arising pre- or post-conversion.

Courts have generally found that post-petition contracts should be treated as if they had been assumed under section 365 because post-petition contracts and assumed contracts are functionally equivalent.[30] Once a pre-petition executory

---

[29] 11 U.S.C. § 348(d).
[30] 3 COLLIER ON BANKRUPTCY ¶ 365.03[2] (citing *Devan v. Simon DeBartolo Group, L.P. (In re Merry–Go–Round Enters., Inc.),* 180 F.3d 149, 156 (4th Cir. 1999) (describing assumed

contract is assumed, the debtor must "pay the amounts that come due under the contract as administrative expenses of the estate."[31] If a trustee (or debtor in possession in chapter 11 cases) assumes an executory contract under section 365(d), meaning the parties are bound to continue performing under the contract, *any liability under the contract is typically treated as an administrative expense*.[32] This is because in essence, at the time of assumption, the trustee or debtor in possession is deemed to have properly weighed all the potential pros and cons of the contract and to have decided that the benefits exceeded the detriments. Put differently, the trustee or debtor in possession effectively determines that the contract is necessary and beneficial to the estate at the time of assumption, qualifying any expenses arising there under for administrative priority treatment under section 503(b).

The same analysis governs the treatment of new (post-petition) contracts entered by the chapter 11 debtor. All obligations that come due under such a contract must be paid as administrative expenses. This is true even if the debtor has ceased operating and is liquidating, as was the case here; and it is true even if each *particular, line-item* expense did not *directly* (or *retrospectively*) benefit the estate. The principle of the *Nabers* decision applies here, in that the debtor in possession was "able to transact" with OSC "in the same manner as a solvent enterprise," and accordingly was obligated to "pay[ ] the full and ordinary cost[s]" incurred under the contract.[33] These individual expenses are part and parcel of the deal made by the debtor, *which the debtor itself judged, prospectively, did on the whole benefit the*

---

    contracts and post-petition contracts as "functionally analogous"); *Adamowicz v. Pergament (In re Lamparter Org., Inc.),* 207 B.R. 48, 51 (Bankr. E.D.N.Y. 1997) ("That a newly executed, post-petition contract and an assumed, pre-petition contract receive similar treatment is not surprising, as each is the functional equivalent of the other.")). In fact, it has been said that section 365 "is designed to ensure that debtors in possession re-examine pre-petition contracts *in the same way that they would examine new, post-petition agreements*." *In re Lamparter Org., Inc.*, 207 B.R. at 52 (emphasis added). *See also Mission Prod. Holdings v. Tempnology, LLC*, 587 U.S. 370, 373-74 (2019) ("Section 365(a) enables the debtor (or its trustee), upon entering bankruptcy, to decide whether the contract is a good deal for the estate going forward. If so, the debtor will want to assume the contract, fulfilling its obligations while benefiting from the counterparty's performance. But if not, the debtor will want to reject the contract, repudiating any further performance of its duties. The bankruptcy court will generally approve that choice, under the deferential 'business judgment' rule.").

[31] *In re Avianca Holdings S.A.*, 127 F.4th 414, 421 (2d Cir. 2025) (citing *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531-32 (1984)).

[32] *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531-32 (1984) ("Should the debtor-in-possession elect to assume the executory contract . . . it assumes the contract, and the expenses and liabilities incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate, 11 U.S.C. § 503(b)(1)(A).").

[33] *Nabers Offshore Corp.*, 931 F.3d at 443-44.

*estate*. Again, it bears emphasis that the Code does not empower the debtor to take back that judgment nor to cross out disfavored line-item costs after accepting all the bargained-for benefits. Nor will the Court second-guess the debtor's judgment retroactively, long after the debtor in possession lawfully entered into the contract and thus accepted *both* its benefits *and* its burdens.

This reasoning fully aligns with the rationale behind the Code's treatment of administrative claims. Whether a contract preexisted the bankruptcy filing and is then assumed, or whether it is entered into post-petition, these are transactions the debtor in possession has undertaken because it is convinced that they are necessary and bring value, *on net*, to the bankruptcy estate. The debtor in possession has effectively already determined that the contracts benefited the estate and should be given administrative treatment under section 503(b). Together with various other provisions, section 365 holds a debtor responsible for expenses arising under executory contracts once assumed, and analogously, debtors should certainly be held responsible for expenses arising under post-petition executory contracts where the creditor agrees to conduct business with the debtor in bankruptcy.[34]

Applying this analysis to OSC's claim, the Court will treat the expenses arising under the Rental Agreement as administrative claims of the chapter 11 bankruptcy. Once entered into, the chapter 11 estate became responsible for all expenses stemming from the contract, including those expenses that arose after the case converted. This result is the one most consistent with the statute; it happens to make good policy sense as well. This protection encourages parties to enter into contracts with debtors in bankruptcy, which in turns facilitates debtors' rehabilitation.

Therefore, the Court finds that OSC is entitled to a chapter 11 administrative expense treatment for its entire claim, regardless of whether those expenses arose after the case converted to chapter 7.

---

[34] As discussed below, under certain circumstances that do not apply in this chapter 7 case, debtors may also be responsible, as administrative claims, for some expenses arising while they consider whether to assume or reject. *See e.g.*, 11 U.S.C. §§ 365(d)(3) (requiring the trustee to timely perform all obligations of the debtor under unexpired leases of nonresidential real property from the date of the order for relief until the lease is assumed or rejected), (d)(5) (requiring the trustee to timely perform all obligations of the debtor in chapter 11 cases for unexpired leases of personal property); *In re Steepologie, LLC*, No. 23-10671, 2024 WL 117525 at *3-4 (Bankr. W.D. Tex. Jan. 10, 2024) (noting divisions in case law but concluding that "the usual remedy for the failure to make a § 365(d)(3) payment is a right to payment of that amount in full as an administrative claim under § 503(b).").

### C. The post-conversion expenses are not entitled to the status of chapter 7 administrative expenses.

The remaining question is whether the post-conversion expenses are entitled to the even more elevated status of chapter 7 administrative expenses.[35] Under the facts presented here, the issue can be stated thus: Should the Court accord chapter 7 administrative expense status to expenses that arise (a) after a chapter 11 case converts to a chapter 7 case, (b) pursuant to a post-petition contract, but that (c) do not benefit the chapter 7 estate? The answer is no.

The Bankruptcy Code provides some guidance in section 348, which governs the effect of conversion on a bankruptcy case. Upon conversion, the newly appointed chapter 7 trustee gets an opportunity to re-evaluate all the debtor's executory contracts,[36] including post-petition contracts, to ensure that only those contracts that benefit the chapter 7 estate are preserved.[37] Section 348(c) facilitates this review by making section 365(d), which ordinarily only governs *pre-petition* executory contracts, applicable to all the debtor's executory contracts, even those entered into *post-petition*.[38] Together, sections 348 and 365(d)(1) give the chapter 7 trustee 60 days to assume or reject any contract that remains executory on the conversion date.[39] This provides a window of time to consider the estate's contracts given the

---

[35] Chapter 7 administrative expenses are paid before chapter 11 administrative expenses. 11 U.S.C. § 507(a)(1)(C). This provision reduces the chance that liquidation of the assets will not cover the cost of administering the chapter 7 case.

[36] This section also applies to the debtor's unexpired leases.

[37] An equipment rental agreement, like the one here, is a type of executory contract because both the debtor and counterparty had continuing obligations to each other while the case was in chapter 11 and also after it converted to chapter 7. *In re Texas Wyoming Drilling, Inc.*, 486 B.R. 746, 754 (Bankr. N.D. Tex. 2013) ("[A]n executory contract is usually defined as "[a] contract under which debtor and nondebtor each have unperformed obligations and the debtor, if it ceased further performance, would have no right to the other party's continued performance." Black's Law Dictionary (9th ed. 2009)). *Accord* 3 COLLIER ON BANKRUPTCY ¶ 365.02[2][a].

[38] 11 U.S.C. § 348(c); 3 COLLIER ON BANKRUPTCY ¶ 365.02(e) ("Section 365 applies only to a contract or lease in existence at the commencement of the case."); *In re Bradlees Stores, Inc.*, No. 00-16033, 2001 WL 1112308 (Bankr. S.D.N.Y. Sept. 20, 2001) ("Section 365 of the Bankruptcy Code permits a debtor to assume or reject any *pre-petition* executory contract or unexpired lease." (emphasis added)).

[39] *See* 11 U.S.C. §348(c) ("Sections 342 and 365(d) of this title apply in a case that has been converted. . . as if the conversion order were the order for relief.") and 11 U.S.C. §365(d) ("In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract

debtor's changed financial condition and assume those that are beneficial to the estate and reject those that are burdensome.[40] Bankruptcy courts will generally defer to the trustee's business judgment on whether to assume or reject executory contracts.[41]

Here, the Debtor's financial situation obviously changed when the case converted from a reorganization under chapter 11 to a liquidation under chapter 7. This change required the new administrator of the estate, the Trustee, to reevaluate the Rental Agreement and decide whether to assume or reject it. Since the Debtor was no longer operating and no longer needed OSC's equipment or services, the Trustee rightfully did not assume the Rental Agreement and it was rejected by

---

or unexpired lease...of personal property of the debtor within 60 days after the order for relief…then such contract or lease is deemed rejected."). *See also* 3 COLLIER ON BANKRUPTCY ¶ 348.04 (16th 2025) ("Sections 348(c) and 365(d) read together indicate that a chapter 7 trustee may assume or reject an executory contract entered into in a chapter 11 . . . case subsequently converted to chapter 7.") (citing *In re Tucci*, 47 B.R. 328 (Bankr. E.D. Va 1985); *In re Joyner*, 74 B.R. 618 (Bankr. M.D. Ga. 1987)).

[40] For some contracts, for instance those governing commercial real estate, section 365(d) requires the trustee to timely perform all obligations of the debtor during this window of time, meaning any expenses derived from those obligations are typically given administrative status. However, section 365(d)(1) contains no such requirement for any expenses incurred during the trustee's 60-day window in chapter 7 cases that do not involve commercial real estate (like this one), and thus any expenses accrued during this window do not receive administrative treatment. *Compare* 11 U.S.C. § 365(d)(1) ("In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.") *with* § 365(d)(3) ("The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.") *and* § 365(d)(5) ("The trustee shall timely perform all of the obligations of the debtor . . . first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property . . . until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof.").

[41] *Mission Prod. Holdings v. Tempnology, LLC*, 587 U.S. 370, 373-74 (2019) ("Section 365(a) enables the debtor (or its trustee), upon entering bankruptcy, to decide whether the contract is a good deal for the estate going forward. If so, the debtor will want to assume the contract, fulfilling its obligations while benefiting from the counterparty's performance. But if not, the debtor will want to reject the contract, repudiating any further performance of its duties. The bankruptcy court will generally approve that choice, under the deferential 'business judgment' rule.").

operation of the statute in June of 2025, 60 days after the case converted to chapter 7. By deciding to reject the Rental Agreement, the Trustee clearly determined that it was not necessary or beneficial to the chapter 7 estate. Therefore, OSC's claim is not entitled to chapter 7 administrative status.

## Conclusion

ACCORDINGLY, IT IS ORDERED that the Application was timely.

IT IS FURTHER ORDERED that the Application is granted and OSC's $151,370.83 claim is allowed as a chapter 11 administrative expense.

# # #